No. 20-2842

==================================================

*In The United States Court of Appeals*

*For the Seventh Circuit*

==================================================


MICHAEL WHITE, and ILLINOIS STATE RIFLE
ASSOCIATION,

Plaintiffs-Appellants,

v.

ILLINOIS STATE POLICE, BRENDAN F. KELLY, in is official
capacity as Acting Director of the Illinois State Police, JAROD
INGEBRITSEN, in his official capacity as Bureau Chief of the Illinois
State Police Firearms Services Bureau, ILLINOIS CONCEALED
CARRY LICENSING REVIEW BOARD,JEREMY MARGOLIS, as
Chair of the Illinois Concealed Carry Licensing Review Board, PETER
BUCKLEY, INGER BURNETT-ZIEGLER, LIONEL CRAFT,
JOSEPH DUFFY, JON JOHNSON, AND DONALD WILKERSON,

Defendants-Appellees.


==================================================

Appeal from a Judgment of the United States District Court for the
Northern District of Illinois
The Hon. Joan Humphrey Lefkow, District Judge
Case No. 1:19 CV 2797

==================================================


APPELLANTS' REPLY BRIEF

Gregory A. Bedell (Atty. ID #189762)
Knabe & Bedell
33 North Dearborn, 10th Floor
Chicago, IL 60602
(312) 977-9119
gbedell@kkbchicago.com
* Counsel of Record


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547/630.596.4445 Fax
dsigale@sigalelaw.com

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-2842

Short Caption: White and Illinois State Rifle Association v. Illinois State Police

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
      Michael White and Illinois State Rifle Association


(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
      Gregory A. Bedell; David G. Sigale


(3)   If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

            None

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            None

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

      NA

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

      NA

Attorney's Signature: /s/ Gregory A. Bedell                    Date: September 30, 2020

Attorney's Printed Name: Gregory A. Bedell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑   No ☐

Address: 33 North Dearborn Street, 10th Floor

       Chicago, Illinois 60602

Phone Number: 312.307.7558                    Fax Number:

E-Mail Address: gbedell@kkbchicago.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As     Clear Form

Appellate Court No: 20-2842

Short Caption: Michael White and Illinois State Rifle Association v. Illinois State Police

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
   Michael White and Illinois State Rifle Association

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   Knabe & Bedell; Law Firm of David G. Sigale, P.C.

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and
      None

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
      None

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
   N/A

Attorney's Signature: /s/ David G. Sigale     Date: September 30, 2020

Attorney's Printed Name:  David G. Sigale

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address:  430 West Roosevelt Road

   Wheaton, IL 60187

Phone Number: 630.452.4547     Fax Number:  630.596.4445

E-Mail Address: dsigale@sigalelaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

Table of Contents .................................................................... i

Table of Authorities ............................................................. .. v

Argument ............................................................................ 1

I.  PLAINTIFF WHITE'S CLAIMS ARE NOT BARRED BY
    *RES JUDICATA*........................................................... 1

    A.  White's 2017 application for a CCL was a "second
        transaction." ...................................................... 2

    1.  New facts, new review, new cause of action............. 2

    2.  The Defendants misapply the law on claim
        preclusion.......................................................... 3

    3.  Issue preclusion does not bar White's
        claims.................................................................. 4

II.  THE ISRA SHOULD HAVE BEEN GIVEN LEAVE TO RE-
     PLEAD ITS CLAIMS AND ESTABLISH STANDING....... 5

III. WHITE'S COMPLAINT PLED UNCONSTITUTIONAL
     BURDENS ON HIS SECOND AMENDMENT RIGHTS..... 7

    A.  The Defendants' "dangerous person" analysis misses
        its mark.............................................................7

    1.  White is not dangerous under any relevant statutory
        provision.................... ...................................... 8

    2.  White is not dangerous even under the Defendants'
        "historical analysis"............................................. 9

a. The restriction in *NRA* was a clear, legislatively determined, objective categorical prohibition.......... 9

b. The age regulation is temporary.................... 10

c. Historic regulations provide little, if any, guidance in evaluation the FCCA.......................... 11

d. If the subjective historical regulations cited by Defendants were ever relevant, they are not now....13

e. Administratively determined "may issue" firearm licensing schemes are under Supreme Court review................................................................. 15

3. The Defendants' authority for a "broader understanding of groups who may be disqualified from public carriage" does not support that White is or was dangerous or that the FCCA provisions are in any way similar.................................................... 16

a. The Eighth Circuit recognized both the burden of a permanent ban and the need for procedural protections..................................................... 16

b. This matter is distinguishable from cases like *NRA* and *Rene E.*.............................................. 18

4. White's lawful possession of a FOID card belies the Review Board's conclusion and reveals the irrational nature of the vague "danger or threat" test............18

B. The nature and duration of the Second Amendment burden Plaintiffs' alleged their Complaint require application of strict or near strict scrutiny....................20

1.  FCCA §§20(g) and 10(4) unconstitutionally burden the core of the Second Amendment........................ 20

2.  A permanent ban should be considered under strict or near strict scrutiny.............................................. 22

C.  FCCA §§20(g) and 10(4) work unconstitutional burdens on the Second Amendment rights, even when considered under intermediate scrutiny........................ 23

1.  The Board's discretion is not limited by standards or relevant restrictions............................................. 23

2.  The Board is not bound by the context of the FCCA................................................................ 25

3.  Neither administrative review nor subsequent precedent restrain the Board's discretion.............. 26

4.  The nature of the Board's composition does not limit the scope of evidence it may consider, does not provide any objective standards and does not, of itself, overcome unlimited discretion..................... 26

5.  Plaintiffs make a proper request for this Court to revisit its position on the FCCA's preponderance standard.............................................................. 27

D.  The FCCA works a permanent ban on a person's right to bear arms for self-defense...................................... 28

1.  *Berron* did not declare FCCA §§20(g) and 10(4) constitutional...................................................... 30

2.  The Defendants are correct, we do not know on what the Board relied in finding White a "danger" and a "threat"............................................................... 31

IV. WHITE'S COMPLAINT PLED UNCONSTITUTIONAL DEPRIVATION OF DUE PROCESS........................... 32

    A. *Culp II* "cannot bear the weight" Defendants place on it................................................................. 32

    B. The Complaint sufficiently alleged constitutional challenges to procedure.................................. 33

    C. The FCCA's failure to provide applicants a right to hearing is a denial of due process of law even under Defendants' lower standard......................................... 34

    D. The Board's decision merely "parroted" FCCA §§20(g) and 10(4), depriving White of meaningful review............................ 35

CONCLUSION ............................................................... 37

# TABLE OF AUTHORITIES

*Cases*

*Arlin Golf, LLC, v. Vill. of Arlington Heghts,*
631 F.3d 818 (7th Cir. 2011)............................................................. 3

*Berron v. Ill. Concealed Carry Licensing Review Bd.,*
825 F.3d 843 (7th Cir. 2016)........................................... *passim*

*Boddie v. Connecticut,*
401 U.S. 371 (1971)........................................................................34

*Brooks v. Wallace,*
279 F.3d 518 (7th Cir. 2002)......................................................... 27

*Chaidez v. Ford Motor Co.,*
937 F.3d 998 (7th Cir. 2019)........................................................... 7

*City of Aurora v. Navar,*
210 Ill.App.3d 126 (2d Dist. 1991)............................................. 27

*Cleveland Bd v. Loudermill,*
470 U.S. 532 (1985)................................................................. 34, 35

*Culp v. Raoul,*
921 F.3d 646 (7th Cir. 2019)..........................................*passim*

*District of Columbia v. Heller,*
554 U.S. 570 (2008)................................................................. 13, 20

*Dowrick v. Village of Downers Grove,*
840 N.E.2d 785 (2nd Dist. 2005)................................................... 4

*Foster v. DeLuca,*
545 F.3d 582 (7th Cir. 2008).......................................................... 5

*Glover v. Carr,*
949 F.3d 364 (7th Cir. 2020)............................................................. 5

*Grigolet Co. v. Pollution Control Board,*
245 Ill.App.3d 337 (4th Dist 1993)................................................. 27

*Horowitz v. Alloy Auto Co.,*
992 F.2d 100 (7th Cir. 1993)........................................................... 28

*Huon v. Johnson & Bell, Ltd.,*
757 F.3d 556 (7th Cir. 2014)............................................................. 2

*In re DeBartolo,*
111 Ill.2d 1 (Ill. 1986)................................................................... 13

*Kanter v. Barr,*
919 F.3d 437 (7th Cir. 2019)...................................…..................... 29

*Kuck v. Danaher,*
822 F. Supp. 2d 109 (D. Conn. 2011)............................................. 25

*Moore v. Madigan,*
702 F.3d 933 (7th Cir. 2012)...................................................... 8, 20

*NRA v. AFT,*
700 F.3d 185 (5th Cir. 2015).................................................... *passim*

*New York State Rifle & Pistol Assoc. v. Cortlett,*
20-843................................................................................... 15

*O'Brien v. Village of Lincolnshire,*
955 F. 3d 616 (7th Cir. 2020).......................................................... 6

*Ortiz-Estrada v. Holder,*
757 F.3d 677 (7th Cir. 2014)........................................................... 13

*People v. Garrison,*
412, N.E.2d 483 (1980)................................................................. 27

*Robertson v. Allied Sols, LLC,*
902 F.3d 690 (7th Cir. 2018).................................................... 6

*Shepard v. Madigan* (cons. into *Moore v. Madigan*),
702 F.3d 933 (7th Cir. 2012)..................................................... 22

*United States v. Bena,*
664 F.3d 1180 (8th Cir. 2011)............................................. 16, 17

*United States v. Emerson,*
270 F.3d 203 (5th Cir.2001)...................................................... 17

*United States v. Rene E.,*
583 F.3d 8 (1st Cir. 2009)......................................................... 18

*United States v. Skoien,*
614 F.3d 638 (7th Cir. 2010)..................................................... 29

*United States v. Yancy,*
621 F.3d 681 (7th Cir.2010)................................................. 11, 22

*Welch v. Johnson,*
907 F.2d 714 (7th Cir. 1990)....................................................... 2

*White v. Ill. Dep't of State Police Firearms Serv. Bureau,*
2017 IL App (1st) 161282-U....................................................... 25


Constitutional Provisions

U.S. Const. Amend. II ................................................... *passim*

U.S. Const. Amend. XIV ................................................ *passim*

Statutes, Rules, and Ordinances

F.R.Civ.P 15(a)(1)(b)................................................................ 6

18 U.S.C. §922(b)................................................... 9

18 U.S.C. §922(c)................................................... 9

18 U.S.C. §922(g)............................................. *passim*

18 U.S.C. §922(x)(2)(A)........................................ 18

430 ILCS 65/8...................................................... 8

430 ILCS 65/10.................................................... 30

430 ILCS 66/10(a)(4)........................................*passim*

430 ILCS 66/20(g)............................................ *passim*

430 ILCS 66/25(3)................................................ 8

Firearm Law of Michigan, §28.425b(7)(h) and (i)............................ 14

Firearm Law of Michigan, §28.425d................................. 15

N.D. Cent. Code § 62.1-03-01(2)(a)................................... 14

RSMo, § 571.030(1)(1)................................................14

*Other Authorities*

Winkler, *Gunfight: The Battle over the Right to Bear Arms in America* 116 (2011)..................................................................12

# ARGUMENT

## I. WHITE'S CLAIMS ARE NOT BARRED BY *RES JUDICATA*

The Defendants' efforts to bar White's claims based on *res judicata* are the strongest evidence White has that the initial, 2014 decision of the Concealed Carry Licensing Board (the "Board"), which denied White his CCL because White allegedly "poses a danger to himself or herself or others, or is a threat to public safety," is an unconstitutional permanent bar against White ever obtaining a CCL. Whether through claim preclusion or issue preclusion, the Defendants contend the Board's first adjudication that White is not eligible for a CCL cannot be challenged here or anywhere else; this is a *de facto* permanent ban.

If the Defendants' *res judicata* argument is correct, White's second application was doomed from the beginning and the Board's 2014 decision, that he is ineligible for a CCL because he posed a threat or danger, is final. This application of the FCCA is thus an unconstitutional permanent bar of his Second Amendment rights. As the District Court correctly noted, however, the Defendants' *res judicata* argument is wrong.

## A. White's 2017 application for a CCL was a "second transaction."

Illinois' law of claim preclusion imposes three requirements for claim preclusion to apply: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558 (7th Cir. 2014) (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 302 (1998)).

However, where there is a second "transaction" arising *after* a previously litigated claim, there is no identity of causes of action and the claims related to that second transaction are not barred. *Welch v. Johnson*, 907 F.2d 714, 723 (7th Cir. 1990). White's 2017 application was such a second transaction; the Board's denial of White's second application presented new and reviewable violations of White's Second Amendment rights as alleged in the Complaint.

### 1. New facts, new review, new cause of action

White's second application independently triggered the Board's obligation under FCCA §20(g) to make a *fresh* determination of whether White poses a "danger" or is a "threat". The two-year period between the 2015 denial of White's first application and his 2017 application

presented the Board with new facts – here the complete absence of any criminal conduct. Certainly had White been arrested in the interim, the Defendants would have trumpeted this fact; the Board would surely have considered it relevant new information; the absence of arrests is an equally relevant new fact for the fresh determination of whether White "poses" a danger or threat.

### 2. The Defendants misapply the law on claim preclusion.

*Arlin Golf, LLC, v. Vill. of Arlington Heights*, 631 F.3d 818 (7th Cir. 2011), on which Defendants rely, is distinguishable. There, the plaintiff sued a municipality alleging its implementation of tax increment financing district was improper. The parties ultimately settled and dismissed the suit. Within a year, the plaintiff sued again, seeking damages based on the same pre-settlement conduct. Affirming the District Court this Court stated "[t]he plaintiffs do not allege that any significant additional facts occurred between [dismissal of the first case and filing of the second case]." *Id.* at 822.

In this case, White's conduct, or absence thereof, during the two-year period was relevant for the Board's new determination of whether

White posed a threat or danger. Moreover, White's Complaint made this time lapse an explicit ground for basing his claim.

The Defendants' argument that only two months passed between the judgment relating to White's first application and the filing of his second application is incorrect. AE Br. p.20. In the administrative decision context, the judgment used to determine the time period is the administrative decision. *See Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 515-16 (2nd Dist. 2005) (administrative decision "constitutes a 'final judgment' on the merits for purposes of *res judicata* or collateral estoppel.").

Applied here, the Board entered the "final judgment" on August 20, 2015, App3, ¶31; White filed his second application two years later, on August 19, 2017, App3 ¶33. This passage of time provided a different factual basis for the Board to evaluate White's second application.

### 3. Issue preclusion does not bar White's claims.

The Defendants briefly address issue preclusion, AE Br, p.20-21, arguing "there are no legal or factual issue presented by this action that were not already litigated to judgment in the state action." As demonstrated above, the Board was required to do a new review of

White's application, which included the interim between "judgment" and second application; this required analysis of new facts and a new application of the FCCA to them. Accordingly, the Defendants' issue preclusion analysis is incorrect, and the issues pleaded in White's Complaint are not barred.[1]

## II. THE ISRA SHOULD HAVE BEEN GIVEN LEAVE TO RE-PLEAD ITS CLAIMS AND ESTABLISH STANDING

The Defendants objections to the ISRA's standing are pleading based: *see e.g.* "there no allegations," AE Br. p.24; "these were insufficient allegations" and the "complaint's allegations were too generic." *Id.* at 27. These deficiencies are curable and the ISRA should have been given the opportunity to file an amended pleading. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (plaintiff typically given at least one opportunity to amend.)

Defendants argue the ISRA should be denied an opportunity that this Court stated "should be liberally granted," *Glover v. Carr*, 949 F.3d 364, 370 (7th Cir. 2020), because "Plaintiffs' never explain how any

---

[1] White's claims challenged the denial of his second application; the Complaint nowhere seeks a re-examination of the first application. The first application is *relevant* to White's claim as it provides context for the Board's decision on White's second application. Accordingly, the *Rooker-Feldman* doctrine does not apply. *See* AE Br. at 21-22.

amendment would have cured the deficiencies." AE Br. p.29. Yet, they were never given the opportunity to do so. *Robertson v. Allied Sols, LLC*, 902 F.3d 690 (7th Cir. 2018), on which Defendants rely, is inapposite because the plaintiff there actually filed a motion for leave to amend but failed to explain in the motion how the amendment would cure the deficiencies. *Id.* at 699.

Defendants' suggestion that Plaintiffs should have filed post-judgment motion for leave to amend is likewise inapplicable. *O'Brien v. Village of Lincolnshire*, 955 F. 3d 616 (7th Cir. 2020), on which Defendants rely, does not so require. Rather, in that case, after amending their complaint several times, the plaintiffs stood on their final complaint, asking for leave to file another complaint under F.R. Civ. P. 59 only after the last amended complaint was dismissed. Finding the plaintiffs' representation made in its Rule 59 motion questionable, the district court denied the Rule 59 motion, which this Court affirmed. *Id.* at 630-32.

Defendants never raised the standing issue in its motion to dismiss (*see* Doc. 15) so Plaintiff never had an opportunity to address this by way of motion or amending pursuant to F.R. Civ. P. 15(a)(1)(b).

*Cf. Chaidez v. Ford Motor Co.*, 937 F.3d 998 (7th Cir. 2019) (plaintiff's passing request in motion response insufficient request to amend). The ISRA wishes to pursue facial challenges to the various aspects of the FCCA. The District Court abused its discretion in dismissing the Complaint without giving the ISRA leave to amend.

## III. WHITE'S COMPLAINT PLED UNCONSTITUTIONAL BURDENS ON HIS SECOND AMENDMENT RIGHTS.

### A. The Defendants' "dangerous person" analysis misses its mark.

The Defendants seek summary disposition in this appeal, arguing that White has no Second Amendment claim because he is a "dangerous person" whose Second Amendment rights may be unreservedly infringed. AE Br., p. 32. Yet, an Illinois citizen is not born with a "dangerous person" label; it must somehow be affixed. In this case, the Board affixed this label on White; and White's Complaint challenged the process the Board employed to reach this conclusion, the conclusion itself, and the permanent ban it works on White's ability to exercise his Second Amendment rights; these claims should be considered on their merits.

## 1. White is not dangerous under any relevant statutory provision.

Both Federal and Illinois statutes proscribe categories of individuals who, as this Court observed in *Moore v. Madigan,* 702 F.3d 933, 940 (7th Cir. 2012), are "obviously dangerous persons" and may not possess firearms. These include "felons and the mentally ill." *Id.* Under 18 U.S.C. §922(g), FCCA §25(3)(A) and  §8(c) of the Firearm Owners Identification Card Act ("FOID Act"), 430 ILCS 65/8, Federal and Illinois law detail these *legislatively determined* "dangerous persons;" White cannot be so labeled under any of these statutory categories. [2]

Moreover, those determined to be "dangerous" under the Illinois statutes have been so *adjudicated* through *judicial* process based on *objective criteria.*   Likewise under §922(g), the categorical prohibitions apply, *inter alia*, only after conviction of specified crimes or adjudication of mental disability.

---

[2] The Plaintiffs' Brief addresses these statutorily proscribed "dangerous persons" (pp.31-36.), but the Defendants' brief failed to address the import of these legislative determinations.

### 2. White is not dangerous even under the Defendants' "historical analysis."

Citing *NRA v. ATF*, 700 F.3d 185 (5th Cir. 2015), the Defendants argue "section 20(g) is consistent with the longstanding practice of prohibiting dangerous persons from carrying concealed weapons through licensure and similar regulatory measures." AE Br., p.33. Yet, again, the Defendants place the cart that is the "dangerous persons" *conclusion* before the analytical horse that leads to that conclusion. An examination of who was deemed dangerous, why they were deemed dangerous and by whom was this conclusion made shows §20(g) (and the corollary CCL issuance criteria in §10(4)) is novel. Moreover, the Defendants' fail to cite one example where mere arrests resulted in the finding that a person was "dangerous," or "unsuitable."

### a. The restriction in *NRA* was a legislatively determined, objective prohibition.

At issue in *NRA* was the Federal prohibition on the sale of handguns to persons under the age of 21. 18 U.S.C. §922(b)(1) and (c)(1). The court there observed the inquiry into violent crime, noting: "Congress's investigation confirmed a 'causal relationship between the

easy availability of firearms other than a rifle or a shotgun and ... youthful criminal behavior.'" 700 F.3d at 199.

This analysis reveals material distinctions between §922 and FCCA §§ 20(g) and 10(4). First, §922 identifies an objective category of individuals in whose hands firearms are dangerous: persons under the age of 21; second, this conclusion was reached after investigation into that category; and third, the prohibition was enacted through legislation.[4]

FCCA §§20(g) and 10(4) can only aspire to such precision. Who the Board deems dangerous is not derived from any investigation of any particular category of individual with objective criteria; it is certainly not based on any legislative determination; rather, the Board itself decides based on what law enforcement agencies, and perhaps an applicant, provide; its criteria are unknown. The Complaint alleged this scheme works an undue burden on Second Amendment rights.

### b. The age regulation is temporary.

Significantly the *NRA* Court recognized that §922(b)(1) and (c)(1) do not impose a permanent ban. In considering the level of scrutiny that

---

[4] Plaintiffs do not concede the correctness of these findings or conclusions, but cite them only as a comparison to the analysis-less standards of the FCCA.

should be applied, the *NRA* court drew on this Court's precedent in

*United States v. Yancy*, 621 F.3d 681, 686–87 (7th Cir. 2010) stating,:

> It is useful to compare this case with *United States v. Yancey*, in which the Seventh Circuit held that 18 U.S.C. § 922(g)(3), the illegal-drug-user firearm possession ban, was "far less onerous" than the firearm-possession bans on felons and the mentally ill because "unlike those who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user like [the defendant] could regain his right to possess a firearm simply by ending his drug abuse." 621 F.3d 681, 686–87 (7th Cir.2010). Similar logic applies here. The temporary nature of the burden reduces its severity.

*NRA*, 700 F.3d at 207.

White's Complaint alleged that the Board has permanently banned him from obtaining a CCL. As both this Court and the *NRA* court have recognized, the prospect of a permanent ban works a more severe burden on the applicant's Second Amendment right, so severe as to demand consideration of strict or near strict scrutiny.

### c. Historic regulations provide little guidance for evaluation of the FCCA.

The *NRA* court examined the age restriction in light of firearm laws adopted throughout United States history. The Defendants latch on to the court's recognition that "[i]t appears that when the fledgling

republic adopted the Second Amendment, an expectation of sensible gun safety regulation was woven into the tapestry of the guarantee." *Id* at 200; *see* AE Br. p.33. Yet the import of this statement is limited. Like §922, the restriction cited were "laws" targeting specific practices, such as the "storage of gun powder" to address fire prevention concerns, or prohibitions on specific categories of individuals from firearm possession. *Id*. These again were objective legislative pronouncements, not an administrative body's subjective determinations.

In addition, categories of individuals historically targeted raise the proverbial eyebrow; while the Defendants select from *NRA* the somewhat innocuous group who "refuse to swear an oath of allegiance to the state or to the nation," *id*, AE Br. p.33, the court noted several others groups whose Second Amendment rights were historically prohibited but which restrictions would not likely stand today:

> "[t]he founders didn't think government should have the power to take away everyone's guns, but they were perfectly willing to confiscate weapons from anyone deemed untrustworthy," a group that included law-abiding slaves, free blacks, and Loyalists;

*Id*, quoting Winkler, *Gunfight: The Battle over the Right to Bear Arms in America* 116 (2011).

The Defendants cannot reasonably seek support from racial or political restrictions on the Second Amendment; Plaintiffs don't suggest this was their intention. However, historical analysis has its obvious limits, not the least of which is that neither the substance nor process of many historic regulations was judicially tested. Indeed, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court acknowledged that the Second Amendment cannot be undermined through the historical acceptance of all manner of firearm regulation because the constitutionality of the regulations were not challenged, the Court noting "[f]or most of our history, the question did not present itself." 540 U.S. at 626.

d.   **If the subjective historical regulations cited by Defendants were ever relevant, they are not now.**

Defendants cite laws from five different states that varyingly required application for a concealed carry license to demonstrate with "proof" that they were of "good moral character"[6] or that they were "suitable" persons.  AE Br., p.33-34.  Yet, two of these five states, North

---

[6] Research of this phrase reveals that its current use is exceptionally limited, appearing in the immigration and nationalization context, *e.g. Ortiz-Estrada v. Holder*, 757 F.3d 677 (7th Cir. 2014), or the application for admission to the practice of law, *e.g. In re DeBartolo*, 111 Ill.2d 1 (Ill. 1986).

Dakota and Missouri, abandoned such conditions and are now "constitutional carry" jurisdictions. N.D. Cent. Code § 62.1-03-01(2)(a); RSMo, § 571.030(1)(1).

Michigan has a system notable for how it differs from the FCCA; rather than leaving the determination of who presents an unacceptable societal risk to an unelected administrative body applying an undefined criteria, Michigan painstakingly details disqualifying conditions[8]; Michigan specifies 44 misdemeanors which, if a person is *convicted within 8 years* of the application for a concealed carry license, would disqualify the applicant; it also specifies an additional 22 misdemeanors which, if a person is *convicted within 3 years* of application, would disqualify the applicant. Firearm Law of Michigan, §28.425b(7)(h) and (i).

Michigan rejects concealed carry license applications only for what it terms "statutory disqualification," without any administrative consideration of applications. Moreover, if an application is rejected because the applicant does not meet all of the statutory conditions in

---

[8] Michigan's ability to specify disqualifying criminal convictions is a clear refutation of the District Court's claim that "it is not possible to conceive" such restrictions in advance. SA17. *See also* AT Br., p.31-36.

subparagraph (7), the applicant may appeal to a Michigan circuit court. *Id,* §28.425d.

### e. Administratively determined "may issue" firearm licensing schemes are under Supreme Court review.

Discretionary licensing schemes, like that embodied in FCCA §§20(g) and 10(4), and employed in a small minority of states, such New York, New Jersey, and California, are currently under review by the United States Supreme Court, having recently granted a petition for Writ of Certiorari in the case of *New York State Rifle & Pistol Assoc. v. Corlett*, 20-843. New York currently requires an applicant to demonstrate "proper cause" to obtain a license to carry a firearm outside the home. The Supreme Court granted the Petition to consider the question: "Whether the State's denial of petitioners' applications for concealed-carry licenses for self-defense violated the Second Amendment." United States Supreme Court, Order issued in 20-843 on April 26, 2021.

3. **The Defendants' authority for a "broader understanding of groups who may be disqualified from public carriage" does not support that White is or was dangerous or that the FCCA provisions are in any way similar.**

The Defendants' authority for their "broader understanding," AE Br. p.35, actually buttress White's argument because neither involve an administrative body's determination based on an undefined characteristic that FCCA §§ 20(g) and 10(4) allow; none were based on arrests or non-violent misdemeanors.

   a. **The Eighth Circuit recognized both the burden of a permanent ban and the need for procedural protections.**

The first sentence of *United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011) states: "Robert Bena pleaded guilty to unlawful possession of firearms while subject to a court order of protection, in violation of 18 U.S.C. §922(g)(8)." *Id.* Like virtually every other case Defendants cite, the prohibition at issue was a legislative enactment of an objectively identifiable characteristic. White is not and never was such a person, having never had an order of protection entered against him.

In addition, the *Bena* Court highlighted other factors, none of which were present in White's case or can be found in FCCA §§20(g)

and 10(4), which were relevant to its decision to sustain the statutory prohibition. The court first noted that "[t]he prohibition, moreover, need not apply in perpetuity, but only so long as a person is 'subject to' a qualifying court order." *Id.* at 1184.

Equally significant was its analysis of the process afforded under this prohibition. After noting that §922(g)(8)(C)(i) requires a judicial finding that the individual presents "a credible threat" to another, which finding must follow "a hearing of which such person received actual notice, and at which such person had an opportunity to participate" (required under §922(g)(8)(A)), the court considered § 922(g)(8)(C)(ii), which *did not* require such a finding. Quoting *United States v. Emerson,* 270 F.3d 203, 262 (5th Cir.2001), the *Bena* Court observed,:

> The Fifth Circuit thought Congress must have "proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined."

*Bena*, 664 F.3d at 1185.

Unlike §922(g)(8), the "finding" that White was a "danger" or a "threat" was not judicially determined after a hearing at which he was given a chance to participate. FCCA §20(g) does not meet these minimum procedural safeguards thought to be assumed in our system of justice.

### b. This matter is distinguishable from cases like *NRA* and *Rene E.*

In *United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009), the court considered 18 U.S.C. §922(x)(2)(A), which prohibits the juvenile possession of handguns. After conducting an historical analysis similar to *NRA*, the court stated "we have concluded that this law, with its narrow scope and its exceptions, does not offend the Second Amendment. *See Heller,* 128 S. Ct. at 2816-17." As stated above with regard to *NRA*, the prohibition was legislatively determined, applied by a court under judicial process and did not work a permanent ban. This situation could not be farther from FCCA §§20(g) and 10(4) and their application to White.

### 4. White's lawful possession of a FOID card belies the irrational nature of the vague "danger or threat" test.

White may not carry a concealed firearm because the Board

"determined that you are a danger to yourself, are a danger to others, or pose a threat to public safety." App3, ¶ 47. Yet, White – this dangerous person - may still possess a loaded gun in his home, around himself and around others in him home (*i.e.* those to whom the Board says he poses a danger), because he is in lawful possession of a FOID card. This irrational situation arises because the FCCA is not tethered (as the FOID Act is) to the virtually universally accepted criteria and processes for removing firearms from objectively identifiable "dangerous persons."

The Defendants clearly misunderstand this, arguing "White also contends that there are no distinctions between possession in the home and public carriage." AE Br., p.37. The issue is not the inherent dangers of public carriage, but the danger posed by the *person carrying*. As this Court noted in *Berron v. Ill. Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 847 (7th Cir. 2016), the circumstances of carrying a firearm outside the home require that a person seeking to do so must learn gun safety and demonstrate a specified level of shooting skill; indeed, there are additional differences. But, how the *person* deemed too "dangerous" to be trusted with a loaded firearm in public somehow becomes (with that same loaded firearm) less dangerous to himself or others around

him once he steps into the home is inexplicable by these or any other "distinctions" between public carry and home possession. The Defendants do not address this irrationality that, again, arises from the vague and subjective nature and application of FCCA §§20(g) and 10(4). This Court should, as the glaring discrepancy revealed in *Berron* is illogical and irrational.

**B. The nature and duration of the Second Amendment burden Plaintiffs alleged require application of strict or near strict scrutiny.**

**1. FCCA §§20(g) and 10(4) unconstitutionally burden the core of the Second Amendment.**

There is no escaping the plain language in *Moore,* 702 F.3d at 942 that "[t]he Supreme Court has decided that the [Second Amendment] confers a right to bear arms for self-defense, which is as important outside the home as inside." It is equally clear that the Supreme Court deemed self-defense in the home to be at the core of an individual's Second Amendment rights. *Heller*, 554 U.S. at 592-95, 628-29. If armed self-defense in the home is at the core of the Second Amendment and self-defense outside the home is equally important as inside the home, then the right to armed self-defense outside the home must also be at the core of the Second Amendment.

The Defendants dispute this conclusion drawn directly from the *Moore* Opinion claiming that, in *Culp v. Raoul*, 921 F.3d 646, 654 (7th Cir. 2019) ("*Culp II*"), this Court "rejected [the] argument that *Moore* identified a core right to public carriage." AE Br., p.37. However, *Culp II* did no such thing, as this issue was neither presented to the Court nor necessary for its decision. Rather, in *Culp II* this Court addressed whether equally applying a concealed carry licensing system that requires the ability for Illinois to identify and monitor residents and non-residents alike for changes in criminal and mental health status violated the Second Amendment.

The *Culp II* Court cited *Heller's* acceptance of historical Second Amendment restrictions, stating "[a]nd most to the point here, the Court underscored the propriety of the 'longstanding prohibitions on the possession of firearms by felons and the mentally ill,'" 921 F.3d at 654 (quoting *Heller*, 554 U.S. at 626); then, in addressing the implications of *Moore*, the Court noted *Moore* "reiterated" that felon and mental illness prohibitions were sustainable. *Id.*

The **sole** import of *Culp II* on *Moore* is to clarify that the historical restrictions against possession of firearms by felons and the

mentally ill, *as specifically recognized in Heller*, did not unconstitutionally burden the Second Amendment and could be applied to both Illinois and out-of-state applicants for an Illinois CCL.

Just as Illinois bans a convicted felon from obtaining a FOID card, Illinois restricts a convicted felon from obtaining or continuing to hold a CCL. This Court's decision in *Shepard*, cited by Defendants, recognizes this very point. *Shepard v. Madigan*, 734 F.3d 748, 750-51 (7th Cir. 2013). This is entirely consistent with *Moore's* equation of the Second Amendment rights in the home to those outside the home and that, while subject to "longstanding prohibitions," the right to carry a concealed firearm outside the home is at the core of the Second Amendment.

### 2. A permanent ban should be considered under strict or near strict scrutiny.

In addition, FCCA §§20(g) and 10(4) have imposed a permanent ban on White obtaining a CCL. As noted above, such permanent bans should draw strict/near strict scrutiny. *See Yancy*, 621 F.3d at 686–87; *NRA*, 700 F.3d at 207.

### C. FCCA §§20(g) and 10(4) work unconstitutional burdens on the Second Amendment rights, even when considered under intermediate scrutiny.

#### 1. The Board's discretion is not limited by standards or relevant restrictions.

The Defendants make several bold yet bald assertions about the Board's discretion. Most egregious is that §20(g) "sets forth standards by which the Board is called to evaluate whether a person is a danger to himself or others." AE Br., p.36. Conspicuously, the Defendants fail to recite these standards. There is a very simple reason for this: there are none.

The Defendants show their hand in their Response brief, displaying why White's CCL application is futile, no matter how many times he submits it. The State writes that the objection in part was about "White's membership in the Latin Souls street gang" (AE Br. p.7). The State does not even offer a pretense that this objection was merely an allegation, based on an admittedly flawed system. For example, since White filed his opening Brief:

> Chicago Police Department officials continue to use "deeply flawed" records that list approximately 135,000 Chicagoans as members of gangs more than two years after the city's watchdog found the databases were riddled with errors, ripe for abuse and

disproportionately targeted Black and Latino Chicagoans, according to a follow-up audit released Wednesday by Inspector General Joseph Ferguson.

https://news.wttw.com/2021/03/31/chicago-still-using-deeply-flawed-gang-databases-watchdog (last viewed June 11, 2021).

As further evidence of the Defendants' presumption that White is dangerous, Defendants argue that since witnesses are allegedly often reluctant to come forward, the arrest is more telling than the non-conviction, and that acquittals do not mean innocence, therefore again the arrest is what is relevant (AE Br. p.48-49). In other words, whether or not White was convicted of anything, it is all the same to the Defendants.

The Defendants list several factors that they claim cabin the Board's discretion. The first, that "the Board may consider only information sent to it by ISP, an objecting law enforcement agency, or the applicant" focuses on source rather than the critical aspect of *relevance* AE Br. p.40. This precise inquiry is dictated by the statutory language that requires the Board to determine if "the applicant poses a danger to himself or herself or others, or is a threat to public safety." FCCA §20(g). The relevant inquiry is clearly framed in the present tense: "poses a danger" or "is a threat."

This Court recognized the proper construction, stating: "Illinois is entitled to check an applicant's record of convictions, and any concerns about his mental health, close to the date the applicant proposes to go armed on the streets." *Berron*, 825 F.3d at 847; and this Court recently restated this very proposition, *Culp II*, 921 F.3d at 655 (quoting *Berron*).

The Complaint alleged the Board's ability to consider an arrest history without temporal restrictions, including 20-year old arrests as in White's applications, places an unconstitutional burden on the Plaintiffs' Second Amendment rights. A003, ¶55-63. The District Court erred in dismissing it.

## 2. The Board is not bound by the context of the FCCA.

The Defendants second "restriction" on the Board, that "there are numerous provisions in the [FCCA] that guide the scope of the inquiry," AE Br., p.41, is hollow because the Illinois Appellate Court rejected this very argument when White raised it on appeal. *White v. Ill. Dep't of State Police Firearms Serv. Bureau*, 2017 IL App (1st) 161282-U , ¶¶30-31; *cf Kuck v. Danaher*, 822 F. Supp. 2d 109, 129 (D. Conn. 2011) (application of *ejusdem generis* provided basis to sustain statute). The Defendants' argument here entirely ignores these points made at AT Br.

p.34-36.

### 3.    Neither administrative review nor subsequent precedent restrain the Board's discretion.

The Defendants' fourth "restriction," that "the Board's decisions are subject to review under the Illinois Administrative Review Act," AE Br., p.42, is equally hollow because the Board's finding of "dangerousness" is virtually set in stone. As the District Court noted, SA006, "Illinois courts review the Board's determination of dangerousness deferentially, overturning it only where it is 'clearly erroneous.'"

The Defendants also contend, as did the District Court, that case law interpreting FCCA §20(g), will provide future guidance to the Board. AE Br. p.42. However, the Defendants fail to respond to Plaintiffs' arguments on this at AT Br. p.36-41.

### 4.    The nature of the Board's composition is irrelevant to the scope of evidence it may consider, does not provide any objective standards and does not overcome unlimited discretion.

The Defendants correctly note the composition of the Board. However, the members' expertise and experience are wholly unrelated to the issue of what evidence the Board may consider to determine if an

applicant *is* a danger or threat and do not create an objective standard to make this determination.

Moreover, a blanket grant of discretion to a panel of experts regardless of distinction is impermissible. If experience, unguided by statutory constraints, are the basis for an administrative decision, it amounts to what the court referred to as the impermissible "private conceptions" in *People v. Garrison*, 412, N.E.2d 483, 488 (1980); see also *Grigolet Co. v. Pollution Control Board*, 245 Ill. App. 3d 337 (4th Dist. 1993) (agency belief that it is ultimate authority is "untenable."); *See also City of Aurora v. Navar*, 210 Ill. App. 3d 126 (2d Dist. 1991) ("Reliance on the unbridled discretion of administrative officials fosters the arbitrary and discriminatory enforcement which is prohibited by both the State and Federal Constitutions.")

### 5. Plaintiffs make a proper request for this Court to revisit its position on the FCCA's preponderance standard.

The Plaintiffs openly recognized *Berron's* decision upholding the preponderance of the evidence standards in FCCA §20(g), AT Br. 57. It is entirely proper, however, to present this issue again to the Court; indeed, this Court's decision in *Brooks v. Wallace*, 279 F.3d 518 (7th Cir.

2002), cited by Defendants, AE Br. 39, points the way, referring to Circuit Rule 40, which contemplates that a panel will be asked to overrule a prior decision and sets for the procedure for it to do so. *Id* at 522.

The Defendants' argument, AE Br. 39, that some intervening circumstance must arise before to revisit a decision is inapposite as the case cited for this proposition dealt not with the type of request Plaintiffs make but to one involving "law of the case." *Horowitz v. Alloy Auto Co.*, 992 F.2d 100, 103 (7th Cir. 1993). The Defendants' contention, AE Br. 39, that Plaintiffs provide no basis to revisit the decision, ignores Plaintiffs' arguments, AT Br. 55-56, none of which Defendants challenged.

## D.  The FCCA works a permanent ban on a White's right to bear arms for self-defense.

The Defendants' theory of FCCA §§20(g) and 10(4) reduces to "heads I win, tails you lose." On the one hand the Defendants argue that the Board properly found - twice - White to be "dangerous" based on "standards" applied to White's entire criminal history; they cite studies suggesting just one misdemeanor conviction support a finding that a person is dangerous. AE Br., p.48; they cite this Court's

precedent for the suggestion that arrests for domestic battery is sufficient evidence for concluding someone is dangerous because "many aggressors end up with no conviction, or a misdemeanor conviction, when similar violence against a stranger would produce a felony conviction." *United States v. Skoien*, 614 F.3d 638, 643 (7th Cir. 2010), AE Br., p.48; they cite the dissent in this Court's decision in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), suggesting objective categorical bans are not necessary and can be replaced with a "tailored approach," disarming those "who have demonstrated a proclivity for violence." AE Br., p.45, quoting *Kanter*, *id* at 454.

On the other hand, the Defendants proclaim White's ban is not permanent but resulted from the passage of only three years between application and White's failure to pursue administrative review of the denial of his second application (a process as noted above that is guaranteed to fail). AE Br. p.51.

But, accepting the Defendants' theory, White's disqualifying factors will never change no matter the length of time between applications; the Board will consider the same history. Moreover, the FCCA provides neither guidance for rehabilitation nor a process for

rehabilitation, as does the FOID Act,430 ILCS 65/10. The only hope

Defendants offer is, truly, meaningless: "It is clear if [White] stays out

of trouble with law enforcement, the stronger his application will be,"

Defendants' Motion to Dismiss, Doc. 15, p.13. The underlying

assumption to this cavalier advice is that with the passage of time – the

length of which only the Board *may* know – White *might* be successful.

White's Complaint alleged such a system works a permanent ban and

unduly burdens his Second Amendment right to bear arms.

The Defendants' remaining arguments do not cure this burden.

### 1. *Berron* did not declare FCCA §§20(g) and 10(4) constitutional.

Defendants suggest that this Court in *Berron* "deemed

constitutional" the FCCA, AE Br., p.47, citing 825 F.3d at 846-47. Yet,

the Court's analysis made clear that *Heller* contemplated certain

firearm licensing, stating "licensure is how states determine whether

the requirements have been met." *Id.*

Further, *Berron* did not find constitutional the Board's ability to

consider all arrests, regardless of when they occurred; this issue was

not raised. Rather, in considering one of four issues that were raised,

the Court declined to find unconstitutional a new administrative rule

regarding the Board's process, including the disclosure of the "basis of the objection." *Id.*

Far from condoning what the Board can and did do under §20(g), the Court addressed only the issue of disclosing the objections. Further, the Defendants' interpretation and application of the FCCA is precisely the burden on the Plaintiffs' Second Amendment rights that they pled in their Complaint. Holding that everything is relevant for the Board provides no guidance at all to the statutory issue of whether, at the time of application, the applicant "poses" a threat or "is" a danger.

## 2. The Defendants are correct, we do not know on what the Board relied in finding White a "danger" and a "threat."

Characterizing the less than transparent method the Board employed as "holistic," it is clear what this really means is that no one knows what evidence the Board considers relevant, how it weighs the evidence and, in White's case, what was the basis of its decision. However, contrary to the Defendants' argument, AE Br. p.46-7, the Board's focus in White's case on old arrests and alleged gang membership is clear from what it requested from White, asking on October 25, 2017, for "information regarding the factual circumstances

of your arrest(s) by the Chicago Police Department on or about the indicated date(s): 8/10/1998; 1/9/**1996**; 4/7/**1995**; · 3/6/**1994**; 3/1/**1994**; 10/4/**1993**; 8/3/**1993**." Complaint Ex. 1., App024 (emphasis added).

Similarly, this request included a statement telling of the Board's view of gang membership: "The criminal activities of street gangs pose a substantial threat to the safety and quality of life of the residents of Chicago." It is unlikely the Board would have requested and emphasized information it did not find relevant.

## IV. WHITE'S COMPLAINT PLED UNCONSTITUTIONAL DEPRIVATION OF DUE PROCESS.

### A. *Culp II* "cannot bear the weight" Defendants place on it.

*Culp II* involved a *Heller* sanctioned law that felons and the mentally ill may be denied Second Amendment rights and Illinois' law to enforce this did not violate the Second Amendment. *Supra* p.25-27. From this the Court concluded the plaintiffs could not state a due process claim. 921 F.3d 658 ("There has been no Second Amendment or Privileges and Immunities Clause violation, and therefore, … the plaintiffs cannot show that they have been deprived of a liberty interest without due process.")

In addition, Defendants yet again place the conclusion ahead of the process, stating "White does not satisfy the qualifications for a concealed carry license," AE Br. 52. The Complaint, however, challenges both the Defendants' conclusion and the process it used to get there. Because the Complaint pled these Second Amendment violations, *Culp II* does not apply.

## B. The Complaint sufficiently alleged constitutional challenges to procedure.

The Defendants second argument, that the Complaint does not make cognizable due process challenges, ignores Plaintiffs' arguments; Plaintiffs detail, with case citation, claims of vagueness (AT Br. 49), of the Board's reliance on unreliable and irrelevant evidence (AT Br. 51), the denial of a hearing (AT Br 52), and the Board's failure to provide findings of fact or any factual support for its decision in White (AT Br. 54). Defendants respond to none of these arguments. Instead, they rely on their argument that the FCCA does not violate the Second Amendment. AE Br. 52. To the extent necessary, Plaintiffs incorporate here their arguments above.

**C.** **The FCCA's failure to provide applicants a right to hearing is a denial of due process of law even under Defendants' lower standard.**

The Defendants again ignore Plaintiffs' argument in support of their claim that the FCCA's failure to provide for a pre-deprivation hearing violates due process of law. (AE Br. 52-54.) Instead, the Defendants cherry-pick a Supreme Court precedent that applied a lower due process standard. But, as the Supreme Court noted, that case held "'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd v. Loudermill*, 470 U.S. 532, 542 (1985), quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, (1971) (emphasis in original).

The Court in *Loudermill* addressed what type of pre-termination hearing a public employee should receive. After considering and balancing the competing interests, the Court noted: that '[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" *Id.* at 545, quoting *Boddie,* 401 U.S. at 378. The Court then concluded that the limited right of the employee to submit a

response to the state's charges was sufficient due process *because the employee had a right to a post-termination evidentiary hearing*, stating: "Our holding rests in part on the provisions in Ohio law for a full post-termination hearing." *Id.* at 546.

The FCCA provide for no such post-denial evidentiary hearing. Thus, even under the more relaxed employee/employer evaluation, the FCCA violates due process of law, as alleged in the Complaint.

### D. The Board's decision merely "parroted" FCCA §§20(g) and 10(4), depriving White of meaningful review.

White alleged in his due process of law claim, App003, Complaint, ¶¶47/64 (and 65), that the Board "did not provide any explanation or basis for the decision other than the Board "determined that you are a danger to yourself, are a danger to others, or pose a threat to public safety." Thus, contrary to the Defendants' argument, AE Br. 53, this due process violation was placed at issue.

The Defendants' claim that this argument was forfeited is likewise incorrect as the District Court did not address the due process challenge in its Opinion. Rather, in one paragraph, based entirely on its interpretation of *Berron*, the District Court summarily dismissed

White's due process claim. SA27. Plaintiffs' address the error in this dismissal in their brief, AT Br. 54-55.

Moreover, the District Court, in that part of the Opinion Defendants cite, SA26, completely misapprehended Plaintiffs' argument. Initially, Defendants' motion to dismiss did not challenge the lack of reviewable decision aspect of the Complaint; it focused instead on why it was permissible under due process for the Board to consider White's entire criminal history. Doc. 15, p.19.

Second, Plaintiffs' citation to Illinois administrative law precedents, which the District Court derided, responded specifically to Defendants' Second Amendment related argument that the Board's discretion was "cabined" in part through right to administrative review. *Id* at p.9. Plaintiffs' point was that there can be no true review, even under the "clearly erroneous," standard if the administrative body fails to provide any reviewable basis for its decision. Doc. 28, p.13. These cases were not cited, as the District Court incorrectly concluded, to state an independent Second Amendment or Due Process claim. Thus, nothing was forfeited because the issue was not presented to the District Court.

## CONCLUSION

For the reasons stated herein, and in Plaintiffs' Appellants' Brief, the decision of the District Court should be reversed and remanded both as to White and with the ISRA given leave to replead its claims.

Dated: June 11, 2021          Respectfully submitted,

                              By: /s/ Gregory A. Bedell
                                   Gregory A. Bedell

                              One of the Attorney for Plaintiffs-Appellants Michael White and Illinois State Rifle Association

Gregory A. Bedell (Atty. ID# 6189762)
Knabe & Bedell
33 North Dearborn Street
10th Floor
Chicago, IL 60602
(312) 977-9119
gbedell@kkbchicago.com
* Counsel of Record

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547/630.596.4445 Fax
dsigale@sigalelaw.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6944** words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word 2016 in 14 point Century font.

/s/ Gregory A. Bedell
Gregory A. Bedell
Attorney for Plaintiffs-Appellants


Dated: June 11, 2021

☑

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on ___June 11, 2021___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/___Gregory A. Bedell_____

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                          address:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

s/_____